IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY E. J.,<br><br>**Plaintiff,**<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>**Defendant.** | Case No. 22-CV-1100-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in determining her residual functional capacity ("RFC") because the ALJ did not include, or did not discuss, a limitation in a medical opinion that Plaintiff may miss two days of work a month. Because the Court concludes that the Commissioner's findings are supported by substantial evidence, the Court affirms the Commissioner's decision.

I.   **Procedural History**

On February 21, 2019, Plaintiff protectively applied for a period of disability and disability insurance benefits. She alleged a disability onset date of January 1, 2019. Plaintiff's applications were denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

After a telephonic hearing on March 12, 2021, the ALJ issued a written decision on August 30, 2021, finding that Plaintiff was not disabled. Given the unfavorable result, Plaintiff

requested reconsideration of the ALJ's decision from the Appeals Council.  Plaintiff's request for review was denied on March 1, 2022.  Accordingly, the ALJ's August 2021 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas.  She seeks reversal of the ALJ's decision and remand for a new administrative hearing.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[1]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[3]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act ("Act"), "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(2)(A), 416(i)(1)(a).

>engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe impairment, or combination of severe impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8] "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's RFC, which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10] The claimant bears the burden in steps one through four to prove a

---

[5] *Id.* § 423(d)(2)(A).

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7] *Barkley v. Astrue*, Case 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); and then quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

disability that prevents performance of her past relevant work.[11]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since January 1, 2019—the application date.  She determined at step two that Plaintiff had the following severe impairments: status-post gastric bypass with residual chronic malabsorption, depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD").  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. Continuing, she determined that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently.  She can sit 2 hours at a time for a total of 8 hours in an 8-hour day.  She can stand one hour for a total of 4 hours in an 8-hour day.  She can walk one hour for a total of 2 hours in an 8-hour day.  She can frequently reach overhead and frequently push and/or pull weight with the upper extremities.  She can occasionally operate foot pedals.  She can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds.  She can occasionally stoop, kneel, crouch, and crawl.  She should not work at unprotected heights. She can tolerate occasional exposure to moving mechanical parts, temperature extremes, and vibrations.  She can occasionally operate a motor vehicle.  She can tolerate frequent exposure to humidity/wetness and dust/odors/fumes and pulmonary irritants. She can understand, remember, and carry out simple instructions. She can maintain adequate persistence with simple instructions but would struggle with detailed or complex instructions.  She would function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and the public. She is capable of adapting to changes that are predictable and introduced gradually.[13]

---

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

[12] *Id*. (quoting *Hackett*, 395 F.3d at 1171).

[13] Doc. 10-3 at 177.

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. After considering Plaintiff's age, education, work experience, and RFC, she determined at step five that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Thus, the ALJ concluded that Plaintiff was not under a disability from January 1, 2019, through the date of her decision.

**IV.   Discussion**

Plaintiff asserts that the RFC is deficient. She contends that the ALJ found a medical opinion persuasive but then omitted, without explanation, a limitation for absences two days per month. The Commissioner asserts that the ALJ's RFC fully reflects Plaintiff's limitations and is supported by the evidence.

In this case, the ALJ requested the opinion of Dr. Bajor when evaluating Plaintiff's disability claim. Dr. Bajor completed two documents: (1) a Medical Statement of Ability to do Work-Related Activities ("Medical Statement") and (2) a Medical Interrogatory. The Medical Statement opined on Plaintiff's functional limitations, and Dr. Bajor found that Plaintiff had physical abilities consistent with a light range of work. The Medical Interrogatory opined on whether Plaintiff's impairments met a disabling impairment. Although Dr. Bajor identified five impairments, including malabsorption syndrome with J-tube, she stated that none of the impairments, combined or separately, met an impairment in the Listing of Impairments. In response to a question in the interrogatory about Plaintiff's functional limitations, Dr. Bajor stated: "Please see RFC. In addition, claimant may have absences of 2 days per month due to J tube complications, infusion therapy."[14]

---

[14] Doc. 10-10 at 318.

The ALJ found Dr. Bajor's medical opinion persuasive. The ALJ noted that the opinion was "well supported by and consistent with the medical evidence of record."[15] She found that Dr. Bajor reviewed the entirety of the record, and that the medical opinion was supported with ample evidence and explanation. The ALJ adopted every functional limitation set forth by Dr. Bajor in the Medical Statement.

Plaintiff, however, contends that it was error for the ALJ to not include or address Plaintiff's absences from work. The Commissioner asserts that Dr. Bajor's statement that Plaintiff may miss two days of work was not a medical opinion under the regulations because it did not relate to Plaintiff's ability to perform the physical or mental demands of work activities. In addition, the Commissioner argues that Dr. Bajor did not definitively state that Plaintiff would be absent from work two days a month but instead stated that she "may" have absences. Thus, the Commissioner contends that there is no error because the RFC fully reflects Plaintiff's functional limitations, and no additional limitation was needed.

Under the governing regulation adopted in 2017, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in" certain specified areas.[16] These areas include physical demands, mental demands, other demands relating to senses, and the ability to adapt to environmental conditions.[17] The plain language of the regulation states that a medical opinion is a statement about functional limitations. It does not encompass an opinion regarding absences from work. Absenteeism from work due to health issues, however, could affect the claimant's ability to perform the physical and mental demands of the job.

---

[15] Doc. 10-3 at 185.

[16] 20 C.F.R. § 404.1513(a)(2).

[17] *Id.* at § 404.1513(a)(2)(i)-(iv).

The parties agree that there is no case law addressing whether an opinion regarding absences from work due to medical impairments constitutes a medical opinion under the new regulation. Nevertheless, the Court finds it unnecessary to definitively decide this issue because, in this case, there is no statement that Plaintiff's limitations include missing work. Dr. Bajor's statement, contained in a Medical Interrogatory, states that "claimant may have absences of 2 days per month due to J tube complications, infusion therapy."[18] She did not state that Plaintiff *would* miss two days of work each month. Instead, she stated that Plaintiff *may* miss two days of work each month. Acknowledging Plaintiff's *potential* for missing work is not the same as opining that she will be *definitively* missing work. And Dr. Bajor did not include any limitations regarding Plaintiff's absenteeism, or potential for missing work, in the Medical Statement in which she set forth Plaintiff's functional work limitations. Thus, Dr. Bajor did not include a work limitation regarding absences in her medical opinion. Accordingly, the ALJ did not need to discuss or include any such limitations in Plaintiff's RFC about absenteeism.

In sum, Plaintiff's RFC fully reflects Dr. Bajor's proposed functional limitations, and it was not error for the ALJ to address or discuss Plaintiff's potential absenteeism.

## V.     Conclusion

The ALJ's RFC determination is supported by substantial evidence. Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

---

[18] Doc. 10-10 at 318.

Dated: March 16, 2023

                                     S/ Julie A. Robinson
                                     JULIE A. ROBINSON
                                     UNITED STATES DISTRICT JUDGE